USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS ISAAC,

        Plaintiff,

- against -

THE CITY OF NEW YORK, CORIZON HEALTH INC., CORIZON HEALTH CLINICAL SOLUTIONS, LLC, CORIZON INC., CORRECTIONAL MEDICAL ASSOCIATES OF NEW YORK, P.C., New York City Police Department Officer JUAN CABRERA (Shield No. 26123), P.O. JOHN DOEs, and P.O. JOHN ROEs, in their individual capacities,

        Defendants.

**OPINION**

17 Civ. 1021 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this Section 1983 action, Plaintiff Carlos Isaac brings claims against the City of New York ("the City"); Corizon, Inc., Corizon Health, Inc., Corizon Health Clinical Solutions, LLC, and Correctional Medical Associates of New York, P.C. (collectively, "Corizon" or the "Corizon Defendants"); and New York City Police Department ("NYPD") Officer Juan Cabrera alleging false arrest and false imprisonment, fabrication of evidence, abuse of process, malicious prosecution, and failure to provide medical treatment. (Am. Cmplt. (Dkt. No. 36) ¶¶ 8-16, 34-49)[1] The Amended Complaint also asserts state law claims for medical malpractice, and liability under the doctrine of respondeat superior. (Id. ¶¶ 50-56)

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants have moved to dismiss Plaintiff's (1) deliberate indifference to serious medical needs claim against Officer Cabrera; (2) Monell claim against the City and the Corizon Defendants; and (3) medical malpractice claim. (Def. Br. (Dkt. No. 48) at 12-21)

For the reasons stated below, Defendants' motion to dismiss will be granted.

## BACKGROUND[2]

### I. FACTS

On January 22, 2015, Plaintiff was arrested by Police Officer Cabrera and another, unidentified police officer at the corner of 148th Street and Brook Avenue in the Bronx. (Am. Cmplt. (Dkt. No. 36) ¶ 17) The officers brought Plaintiff to the 40th Precinct, where they subjected him to an "invasive[]" search. (Id. ¶ 21)

Plaintiff was charged with the sale and possession of a controlled substance. (Id. ¶ 22) Plaintiff claims that he "was unlawfully arrested" and that the charges against him "were based upon the false statements of [Officer] Cabrera and [Officer] Doe." (Id. ¶¶ 17, 23)

After his arraignment, Plaintiff was transferred to Rikers Island. (See id. ¶ 22) The Corizon Defendants are under contract with the City to provide health care services to pretrial detainees in the City's custody, including at Rikers Island. (Id. ¶10)

Shortly after his arrest, Plaintiff "informed City and Corizon employees . . . that he "needed his prescribed medication and required medical attention." (Id. ¶ 25) Although Plaintiff "displayed the physical signs of being in medical distress during the period of his detention," he "did not receive his prescribed medication . . . for an extended period of time."

---

[2] Unless otherwise noted, the following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

2

(Id. ¶¶ 26-27) According to Plaintiff, "Defendants acted recklessly and with a deliberate indifference to [Plaintiff's] medical needs." (Id. ¶ 28) Due to "medical complications resulting from the defendants' failure to provide adequate medical care," Plaintiff was eventually transferred to Bellevue Hospital. (Id. ¶ 30)

Plaintiff was released from custody on August 22, 2015, and the charges against him were dismissed on October 8, 2015. (Id. ¶¶ 31-32)

The Complaint was filed on February 10, 2017, and alleges (1) Section 1983 claims against Officer Cabrera for false arrest and false imprisonment, fabrication of evidence, abuse of process, malicious prosecution, and deliberate indifference to Plaintiff's medical needs; (2) a Monell claim against the City of New York and Corizon; (3) a medical malpractice claim against Corizon; and (4) respondeat superior liability as to Corizon concerning the medical malpractice claim. (Id. ¶¶ 34-56)

## DISCUSSION

### I.  RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions, are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked

3

assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., or does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

## II. DELIBERATE INDIFFERENCE CLAIM

Defendants contend that Plaintiff has not pled sufficient facts to make out a Section 1983 claim for deliberate indifference to Plaintiff's medical needs. (Def. Br. (Dkt. No. 48) at 12-16)

### A. Applicable Law

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). This is because – in contrast to a convicted prisoner – "'[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner – neither cruelly and unusually nor otherwise.'" Id. (alteration in original) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007)). Thus, "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Id.

4

To establish a Section 1983 claim for deliberate indifference to serious medical need under the Due Process Clause, "a pretrial detainee must satisfy two prongs": (1) "an 'objective prong' showing that the [deprivation of medical care] w[as] sufficiently serious to constitute [an] objective deprivation[] of the right to due process," and (2) "a 'subjective prong' – perhaps better classified as a 'mens rea prong' or 'mental element prong' – showing that the [defendant official] acted with at least deliberate indifference" in denying medical care. Id. at 29, 33 n. 9; Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017).

In order to satisfy the mens rea prong – a plaintiff need only prove that

> the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee, even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

Darnell, 849 F.3d at 35. "[R]ather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" Lloyd, 246 F. Supp. 3d at 719 (alteration in original) (quoting Darnell, 849 F.3d at 33, 35); see also Davis v. McCready, No. 14 Civ. 6405 (GHW), 2017 WL 4803918, at *4-5 (S.D.N.Y. Oct. 23, 2017) (The court must determine "whether an objectively reasonable person in Defendant's position would have known, or should have known, that Defendant's actions or omissions posed an excessive risk of harm to [plaintiff]."). "In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim [brought by a pretrial detainee] is [now] defined objectively." Darnell, 849 F.3d at 35.

5

B. <u>Analysis</u>

1. <u>Sufficiently Serious Deprivation</u>

Determining whether an alleged deprivation of medical care is "sufficiently serious" under the first prong of analysis requires two separate inquiries. Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). "'The first inquiry is whether the [pretrial detainee] was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required.'" Barnes v. Ross, 926 F. Supp. 2d 499, 505 (S.D.N.Y. 2013) (quoting Salahuddin, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 844-47 (1994))). "The second inquiry 'asks whether the inadequacy in medical care is sufficiently serious.'" Feliciano v. Anderson, No. 15 Civ. 4106 (LTS) (JLC), 2017 WL 1189747, at *10 (S.D.N.Y. Mar. 30, 2017) (quoting Salahuddin, 467 F.3d at 280). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). Instead, the determination "must be tailored to the specific circumstances of each case." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).

"'[I]n cases of delayed or inadequate care, 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant. . . . '" Id. (alteration in original) (quoting Sledge v. Fein, No. 11 Civ. 7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013)); see also Bellotto v. Cty. of Orange, 248 F. App'x 232, 236 (2d Cir. 2007) ("When a prisoner alleges denial of adequate medical care, we evaluate the seriousness of the prisoner's underlying medical condition. . . . When a prisoner alleges 'a temporary delay or interruption in the provision of otherwise adequate medical treatment,' we focus on the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption

6

in treatment rather than the prisoner's underlying medical condition alone.'" (quoting Smith, 316 F.3d at 184-86)). "A claim of an unconstitutional delay or interruption in treatment is only cognizable if it 'reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition[,] or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.'" Case v. Anderson, No. 16 Civ. 983 (NSR), 2017 U.S. Dist. LEXIS 137118, at *23 (S.D.N.Y. Aug. 25, 2017) (quoting Amaker v. Coombe, No. 96 Civ. 1622 (JGK), 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002)). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Smith, 316 F.3d at 187 (citations omitted).

Here, Plaintiff has not set forth sufficient facts to demonstrate that the alleged delay in care was "sufficiently serious." While Plaintiff alleges that he displayed "physical signs of being in medical distress," requested his "prescribed medications," and did not receive timely or adequate medical care, Plaintiff does not disclose what his medical condition was or what illnesses he suffers from, what prescriptions he was deprived of, or what signs of medical distress he displayed. (See Am. Cmplt. (Dkt. No. 36) ¶¶ 25-29). Indeed, Plaintiff does not even specify the length of the delay. (See id. ¶ 27)

Plaintiff uses similarly inadequate, conclusory allegations in discussing the consequences of the alleged deliberate indifference: Plaintiff suffered "pain, mental anguish, and physical injury," and "due to medical complications resulting from the defendants' failure to provide adequate medical care, ... was eventually transferred to Bellevue hospital." (See id. ¶¶ 30, 33) Plaintiff does not disclose the medical complications or physical injury he experienced, the treatment he received at Bellevue Hospital, or how Defendants' alleged deliberate

7

indifference caused him to suffer "pain, mental anguish, and physical injury" and to suffer "medical complications."

The Amended Complaint's factual allegations are not sufficient to demonstrate that Plaintiff was deprived of medically necessary treatment or that the risk of harm posed by any delay in medical care was sufficiently serious. See, e.g., Feliciano, 2017 WL 1189747, at *11 ("There are . . . no allegations that his conditions were life-threatening and fast-degenerating, or that they worsened because of the delay, or that the delay was punitive. . . . [T]he Court concludes that any alleged delay was not serious enough to violate [Plaintiff's] constitutional rights."); Gantt v. Horn, No. 09 Civ. 7310 (PAE), 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013) ("[Plaintiff] has not alleged that any delays in his treatment caused any symptoms of his underlying illnesses to worsen. . . . Furthermore, [plaintiff] has not alleged, beyond making conclusory claims, that any delay in treatment, or any inadequacy of such treatment, has put him at an 'unreasonable risk of future harm.' . . . The facts at hand fall far short of those in cases in which courts have found an objectively serious injury." (quoting Smith, 316 F.3d at 188)); Fernandini v. United States, 15 Civ. 3843 (GHW), 2017 WL 3208587 at *9 (S.D.N.Y. July 26, 2017) ("The allegations in the [Complaint] do not suggest that the three-day delay in receiving medical treatment was 'needlessly prolonged.' While the Court accepts as true that Plaintiff felt pain from the bite, . . . nothing in the [Complaint] suggests that the three-day wait time caused 'chronic and substantial pain' or worsened Plaintiff's condition.").

### 2. Excessive Risk to Health or Safety

The Amended Complaint's factual allegations are also insufficient as to the second prong of the Due Process analysis.

Under Darnell, a plaintiff seeking to satisfy the mens rea prong must demonstrate that the defendant behaved in an objectively reckless manner. See Darnell, 849 F.3d at 35. "[A] defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result." Feliciano, 2017 WL 1189747, at *13 (citing Darnell, 849 F.3d at 35 ("[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.")). A mere showing of negligence is insufficient, however. See Darnell, 849 F.3d at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.").

For the same reasons discussed above, the Amended Complaint's factual allegations do not demonstrate that any Defendant acted with "deliberate indifference" to Plaintiff's health. Absent factual allegations disclosing Plaintiff's medical condition and prescriptions, the length of the alleged delay in care, and the physical signs of medical distress Plaintiff exhibited, there is no basis to find that the Defendants "knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result [from the alleged delay in care]." See Feliciano, 2017 WL 1189747, at *14. Accordingly, Defendants' motion to dismiss Plaintiff's deliberate indifference claim will be granted.

9

## II. *MONELL* CLAIM

The City and the Corizon Defendants contend that Plaintiff's Monell claim must be dismissed because he has not identified a specific policy or practice that caused the alleged constitutional deprivation.[3] (Def. Br. (Dkt. No. 48) at 16)

### A. Applicable Law

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Accordingly, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)

A plaintiff can satisfy the "policy or custom" requirement in one of four ways. The plaintiff may allege:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

---

[3] "Corizon, although a private entity, is treated as a municipal actor for purposes of this lawsuit." Grimmett v. Corizon Med. Assocs. of New York, No. 15 Civ. 7351 (JPO) (SN), 2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017); see also Bess v. City of New York, No. 11 Civ. 7604 (TPG), 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013) ("In providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state and therefore, in this context, is the functional equivalent of the municipality." (citations omitted)).

10

Vasquez v. Rockland Cty., No. 15 Civ. 8912 (KMK), 2017 WL 456473, at *4 (S.D.N.Y. Feb. 1, 2017) (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"'[T]he word "policy" generally implies a course of action consciously chosen from among various alternatives.'" Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)). "Policy, in the Monell sense, may of course be made by the municipality's legislative body, . . . but it also may be made by a municipal official 'possess[ing] final authority to establish a municipal policy with respect to the action ordered.'" Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

"'A municipal "custom," on the other hand, need not receive formal approval by the appropriate decisionmaker. . . .'" Triano v. Town of Harrison, New York, 895 F. Supp. 2d at 531 (S.D.N.Y. 2012) (quoting Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)). "Instead, 'an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.'" Id. (quoting Bd. Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997)).

"[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." Id. at 535 (citing Moore v. City of New York, No. 08 Civ. 8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010)). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)); Bess v. City of New York, No. 11 Civ. 7604 (TPG), 2013 WL

11

1164919, at *2 (S.D.N.Y. Mar. 19, 2013) ("[I]n keeping with the pleading requirements imposed by Twombly and Iqbal, a plaintiff must give a factual description of such a policy, not just bald allegations that such a thing existed."). "[A] conclusory, boilerplate assertion of a municipal policy or custom [is] insufficient to survive a motion to dismiss." Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (quoting Santiago v. City of New York, No. 09 Civ. 0856 (BMC), 2009 WL 2734667, at *7 (E.D.N.Y. Aug. 18, 2009) (citing Smith v. City of New York, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003))); see also Brodeur v. City of New York, No. 99 Civ. 661 (WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) (Monell claim dismissed where complaint asserted a policy but contained no "specific factual allegations sufficient to establish that a municipal policy or custom caused [the plaintiff's] alleged injury").

### B. Analysis

Here, Plaintiff alleges – in conclusory fashion – that "the City of New York and Corizon had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged[.]" (Am. Cmplt. (Dkt. No. 36) ¶¶ 38, 48) Plaintiff also claims that the "City of New York and Corizon failed to properly train, screen, supervise, or discipline employees," and that "the City of New York has been aware of the routine, dangerous, and constitutionally inadequate medical care." (See id. ¶¶ 40-41, 57) These boilerplate allegations are plainly insufficient to demonstrate that the City of New York or Corizon had an unconstitutional policy or custom. See, e.g., Duncan v. City of New York, No. 11 Civ. 3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) ("[B]oilerplate statements" that New York City "'has a custom and policy of making illegal and false arrests with excessive force [and] without probable cause,'" and that the City had a "'custom and policy of tolerating . . . false arrest. . . . [and] excessive force,'" "are insufficient to state a claim of municipal liability

12

under Monell."); Bradley v. City of New York, No. 08 Civ. 1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language – that the City 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees – is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause." (internal citation omitted)).

In an attempt to bolster his allegations, Plaintiff refers to "major investigations into patterns of abuse by [Department of Corrections] staff on Rikers Island," to news reports that Riker's Island is going to be shut down, to the City's announcement that it would not renew its contract with the Corizon, and to the results of an investigation that "found that Corizon did not provide adequate screening or supervision of its employees, and [that] the City did not properly oversee this taxpayer-funded vendor, ignoring multiple red flags." (See Am. Cmplt. (Dkt. No. 36) ¶¶ 42-46) However, Plaintiff has not alleged facts suggesting that the events at Rikers Island were in any way linked to a specific policy that resulted in pretrial detainees being deprived of adequate medical care. Plaintiff has also not provided a "factual description of the injurious policy or custom," and "nowhere details which deficient training program or manners of supervision caused the violations suffered by both Plaintiff and . . . other inmates." See Vassallo v. City of New York, No. 15 Civ. 7125 (KPF), 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (dismissing Monell claims against the City and Corizon); Simms v. The City of New York, No. 10 Civ. 3420 (NGG) (RML), 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing Monell claim because the complaint did "not provide any facts that would

13

allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency"), aff'd sub nom. Simms v. City of New York, 480 F. App'x 627 (2d Cir. 2012).

Plaintiff's conclusory allegations regarding the alleged deprivation of adequate medical care that he suffered (see Am. Cmplt. (Dkt. No. 36) ¶¶ 25-33) are likewise not sufficient to establish a municipal custom or policy. See Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."); Vassallo, 2016 WL 6902478, at *14 ("Plaintiff's allegations consist essentially of a recitation of the inadequate medical treatment received and generic claims that such inadequacies were a product of harmful customs and practices or failures to train or supervise. . . . Such boilerplate allegations are insufficient to state a Monell claim." (internal citation omitted)).

Because Plaintiff has not pled facts sufficient to support an inference of a custom or policy that caused Plaintiff's alleged constitutional violation, Plaintiff's Monell claim will be dismissed.

## III. MEDICAL MALPRACTICE CLAIM

Defendants contend that Plaintiff's medical malpractice claim must be dismissed because (1) Plaintiff has not pled facts sufficient to state a claim; and (2) Plaintiff did not comply with the notice of claim requirement set forth in New York General Municipal. Law § 50-e(1). (Def. Br. (Dkt. No. 48) at 19-21)

"Under New York law, the requisite elements of proof in a medical malpractice action are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." Melvin v. Cty. of Westchester, No. 14 Civ. 2995 (KMK), 2016 WL 1254394, at *19 (S.D.N.Y. Mar. 29, 2016) (citing Torres v. City of New York, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001)); see also Banks v. United States, No.

14

10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *16 (S.D.N.Y. Sept. 15, 2011) ("In order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the physician owed a duty of care to the plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries." (citations omitted)), report and recommendation adopted, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011). Accordingly, in order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care. See, e.g., Radin v. Tun, No. 12 Civ. 1393 (ARR) (VMS), 2015 WL 4645255, at *18 (E.D.N.Y. Aug. 4, 2015) ("As with Plaintiff's § 1983 claim, Plaintiff's factually unsupported allegations that the [defendant] attempted to provide her with unwanted psychiatric care is insufficient to state a claim. Plaintiff concludes that the [defendant] breached the standard of care without providing any specific factual allegations from which such a conclusion might be drawn. . . . Furthermore, Plaintiff does not identify the alleged injuries she suffered as a result of these actions."); Koulkina v. City of New York, 559 F. Supp. 2d 300, 329-30 (S.D.N.Y. 2008) (dismissing medical malpractice claim because "plaintiffs do not allege how [defendant's] alleged conduct deviated from accepted medical practice and caused them any harm").

Here, Plaintiff has not alleged sufficient facts to state a claim for medical malpractice. Plaintiff's boilerplate statements that "the individual defendants deviated from the acceptable standards of medical care during their evaluation and treatment" of Plaintiff, and that these "acts . . . were the direct and proximate cause of [plaintiff's] injury," are not sufficient to state a claim. (See Am. Cmplt. (Dkt. No. 36) ¶¶ 50-53) Plaintiff does not explain how the delay in providing him with unidentified prescription medication deviated from accepted medical

15

practice. Moreover, as discussed above, Plaintiff does not identify his medical condition, disclose the prescribed medication, or describe the length of the delay. Nor does he specify what injuries he allegedly suffered as a result of the alleged medical malpractice. Absent such factual allegations, Plaintiff cannot demonstrate a deviation from the standard of care or that this deviation from the standard of care caused him injury. Accordingly, Plaintiff's medical malpractice claim will be dismissed for failure to state a claim.[4]

## IV. LEAVE TO AMEND

Plaintiff has requested leave to amend in the event that this Court grants Defendants' motion to dismiss.

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000), and leave to amend should generally be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted."

---

[4] Because Plaintiff's medical malpractice claim fails for failure to state a claim, this Court does not reach Defendants' argument that Plaintiff's claim is barred for failure to file a notice of claim. This Court notes, however, that while "a notice of claim is a condition precedent to bringing a tort claim against a municipality," see Fincher v. Cty. of Westchester, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997); N.Y. Gen. Mun. Law §§ 50–e(1)(a), 50–i(1), the notice of claim requirement applies "to claims against a municipal employee only to the extent that the employee has a right to indemnification." Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 77 (S.D.N.Y. 2016). Under New York General Municipal Law Section 50-k(3), the City is only required to indemnify an employee "if his liability arose from conduct 'within the scope of his employment and in the discharge of his duties[,]' [that was] 'not in violation of any rule or regulation of his agency,'" and where "the injury was not caused by 'intentional wrongdoing or recklessness on the part of the employee.'" Tulino v. City of New York, No. 15 Civ. 7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (quoting N.Y. Gen. Mun. Law § 50-k(3)). Accordingly, to the extent that Plaintiff is asserting a state law claim against non-municipal Defendants on the basis that they acted recklessly or outside of the scope of their employment (see Am. Cmplt. (Dkt. No. 36) ¶ 28), it is not clear that the notice of claim requirements would apply.

Wright v. Ernst & Young LLP, No. 97 Civ. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Sch., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)).

Based on the current record, this Court cannot conclude that any amendment would be futile. Accordingly, leave to amend is granted. Plaintiff will file any Second Amended Complaint by March 28, 2018.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. Plaintiff is granted leave to file a Second Amended Complaint. Any Second Amended Complaint will be filed by March 28, 2018. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 47, 55).

Dated: New York, New York
March 13, 2018

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge